```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3  Before The Honorable Elizabeth D. Laporte, Magistrate Judge

 4

 5 MAXCREST LIMITED,              )
                                  )
 6          Plaintiff,             )
                                  )
 7 vs.                            )   No. 15MC80270-EDL
                                  )
 8 UNITED STATES OF AMERICA,      )
                                  )
 9          Defendant.             )
   _____)
10
                                      San Francisco, California
11                                    Tuesday, March 22, 2016

12   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                  RECORDING 9:29 - 9:41 = 12 MINUTES
13
   APPEARANCES:
14
   For Plaintiff:
15
                                 Duane Morris LLP
                                 Spear Tower
16                               One Market Plaza, Suite 2200
                                 San Francisco, California
17                                  94105
                           BY:   BRENDAN PAUL RUDDY, ESQ.
18
                                 Duane Morris LLP
19                               30 South 17th Street
                                 Philadelphia, Pennsylvania
20                                  19103
                           BY:   THOMAS W. OSTRANDER, ESQ.
21
   For Defendant:
22
                                 Department of Justice
                                 Tax Division
23                               Ben Franklin Station
                                 Post Office Box 683
24                               Washington, D.C. 20044
                           BY:   AMY TALBURT MATCHISON, ESQ.
25
```

1  Transcribed by:           Echo Reporting, Inc.
                             Contracted Court Reporter/
2                            Transcriber
                             echoreporting@yahoo.com
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---:|
| Tuesday, March 22, 2016 | 9:29 a.m. |

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Now calling Case 15MC80270, Maxcrest Limited versus United States of American.

Counsel please approach to state your appearances for the record.

MR. RUDDY: Good morning, your Honor. Brendan Ruddy on behalf of the Petitioner.

THE COURT: Good morning.

MR. OSTRANDER: And I'm Thomas Ostrander, and I'm here on behalf of the Petitioner also.

THE COURT: Good morning.

MR. OSTRANDER: Good morning, your Honor.

MS. MATCHISON: Good morning, your Honor. Amy Matchison for the United States.

THE COURT: Good morning.

All right. Well, it seems as if I'll have to handle this on an R and R basis and be reassigned, and, you know, it's really an argument about whether or not the U.S. can withdrew without prejudice.

Has this already been re-served?

MS. MATCHISON: Yes, your Honor. Actually, on Thursday the IRS reissued or actually served the reissued summons, and we also gave notice to all the title noticees

on Friday.  I also sent a copy to counsel so that they would have that.

   The United States would suggest that I think the best course of action here would be to grant the second motion to dismiss based on mootness but provide leave to amend to Petitioners to challenge the reissued summons.

          MR. OSTRANDER:  We would prefer to have leave to amend the original motion to quash and incorporate our objection to the second summons.

          THE COURT:  Yeah, in other words to win this motion.

          MR. OSTRANDER:  Right.

          THE COURT:  Yeah.  I mean, I just -- I agree with the U.S. that it's moot and that there's no discovery.  I understand there's, you know, an arguable slight actual distinction between some of the prior cases, but Pacific Fisheries, it seems, really allows -- there were no -- no need for assurances wouldn't reissue, and the fact is I think in general the law favors correcting of arguable technical defects by not fighting over them and bringing motions but just correcting them, and that's what the U.S. did.

          MR. OSTRANDER:  I think we have far more than technical defects here, and if you could give me a few minutes to address it.

1     The primary problem in this case is the absence of the
2 notice that is required to be given to someone in my
3 client's position.  The Internal Revenue Code itself
4 specifically states that when a summons is issued, there are
5 certain persons who are entitled to notice of that summons,
6 and those persons are also specifically entitled to notice
7 setting forth with great specificity what their rights are
8 to object to the summons.
9     It's our position that that notice, which is called
10 Part D of a particular IRS form which is attached to the
11 pleadings, was never provided.  It was not mailed to the
12 Platten (phonetic) address in the British Virgin Islands.
13 It is not part of any of the Government's exhibits to their
14 various pleadings.
15     Notwithstanding the fact that the Government is now
16 alleging that this Part D was, in fact, served, it's never
17 surfaced.  So this is raising some questions.
18         THE COURT:  But what -- what is the injury from
19 that that's not moot?
20         MR. OSTRANDER:  It's a violation of *Pal*, *United
21 States v. Pal*.  One of the four requirements of *Pal* in order
22 for a summons to be validly issued is that the service --
23         THE COURT:  Right.  So but they've withdrawn it.
24 So what -- it's not as if your client's complied with it to
25 their detriment before it was withdrawn, is it?

1     MR. OSTRANDER:  It goes to what the Government's
2 motives were in doing what they did, that is, if the
3 Government failed to include that Part D on purpose as part
4 of some bad faith, then that bad faith carries over to the
5 summons that is current.
6     THE COURT:  Well, there's a current summons now,
7 and I don't know -- I mean, I think she's suggesting that if
8 you have an argument there's something wrong with the
9 current summons given the past history, then you haven't
10 waived that argument.  It may or may not be a successful
11 argument, but you've preserved it either way.
12    MR. OSTRANDER:  But it seems what the Government
13 is trying to do is they are trying to take the potential of
14 their bad conduct, but let's for the sake of argument say
15 that --
16    THE COURT:  You know, we don't know if it's bad
17 conduct or it either -- it may have not have happened at all
18 or if it did it was out of negligence versus bad faith, and
19 none of those -- those are all speculative.
20    MR. OSTRANDER:  They're not -- well, the Clark
21 case strongly suggests I think in this case that we have
22 established the various facts that give us a plausible basis
23 for -- for discovery.  If I may for a moment, let's just go
24 through some of these facts.  No one fact in and of itself
25 supports the notion of bad faith on the Government's part,

but if you put them all together, it raises a lot of questions about why did this happen. We have the Russian competent authority in September or August of 2014 making a request to the Internal Revenue Service for information under the treaty between the United States and Russia for information concerning my client, Platten. Supposedly the Russian IRS is investigating a Russian entity. My client's not under investigation.

It's almost a year before the Internal Revenue Service takes action with respect to that summons. We had a very very experienced Internal Revenue Service lawyer issue the summons and allegedly serve the noticee but fails to include this Part D. Why is that? We have the -- Google, the summoned party, saying to the Internal Revenue Service a week after the summons is served, that we have a policy of sending to the party who's involved a copy of the notice of the summons. It takes the Internal Revenue Service 35 days to get back in response to that request to ultimately acquiesce to Google sending that information to my client by E-mail.

Now, of course, the 20-day period of time to object to the summons has now passed. Why did it take so long? Why did they wait beyond the 20-day period? These are questions I think that need to be answered.

        THE COURT: But what -- what harm came -- I mean,

given that they've withdrawn it, what's the harm?

        MR. OSTRANDER: The harm is is that the same taint that applies to summons number one applies to summons number two.

        THE COURT: Well, shouldn't that be fought out with respect to summons number two?

        MR. OSTRANDER: I think we need to preserve that argument with respect to one.

        THE COURT: Well, all right. Do you want to be heard?

        MS. MATCHISON: I just think, your Honor, that, you know, the United States is not attempting to deprive notice of -- to Maxcrest, and that's certainly why we withdrew the summons and reissued it and made arrangements with counsel to accept it so certainly Maxcrest would have a full and fair opportunity. We certainly do not concede that notice was defective. Notice was mailed. Notice was done pursuant to what the statute requires. The fact that the notice was not received in the mail by his client is not what's required under the law. We don't have to actually confirm receipt. We have to provide notice by the mailing. We attached those. The stips of service includes the proper notice was sent. These were all before your Honor.

    However, that was related to a summons that is now withdrawn. That was mooted. And, again, the United States'

1 actions here are consistent with someone who's not
2 attempting to deprive anyone of notice. There is no
3 tainting.
4      THE COURT: What about this 20 days versus 30?
5      MS. MATCHISON: So Google E-mailed the IRS and
6 said "It is our policy to provide notice to our clients when
7 we've issued -- when we've received a summons." And then
8 Google didn't provide that notice. And it took the IRS,
9 you're right, 35 days to come back to Google and say that we
10 have no objection to that, but that's also not the notice
11 the statute requires to --
12      THE COURT: Did Google say you have to respond to
13 us or we'll go ahead and do it or we won't do it?
14      MS. MATCHISON: No, just that our policy is to
15 notify customers when we receive these summons. And then
16 they didn't follow their policy presumably because they
17 waited to hear back from the IRS, and there was a delay at
18 the IRS, and, you know, that's unfortunate. But, again, it
19 was not to deprive the Petitioner of notice. It was just a
20 delay.
21      MR. OSTRANDER: May I address that more? Again,
22 these are -- the Government did the right thing by mailing
23 to the last known address they had a something. We don't
24 know -- we don't know what it is, and that's a big problem
25 here.

```
 1          THE COURT:  Well, there's a proof of service,
 2  right?  So you're saying it's a lie?
 3          MR. OSTRANDER:  The proof of service of something.
 4  We still don't know what that is.  We know that it includes
 5  a copy of the summons to Google.  Beyond that, we don't know
 6  what it contains.  It certainly -- it certainly, based upon
 7  the pleadings here, does not contain the critical Part D,
 8  and the declarations that were filed by the -- as I refer to
 9  her as the experienced lawyer, IRS lawyer, it's Exhibit A to
10  the Government's motion to quash, if you take a look at
11  that, it has a copy of the summons sent to Google, and it
12  has a copy of the attachment.  It does not contain an
13  Exhibit D.
14      The recent pleading by the Government relative to our
15  objection to their second motion to quash I guess supports
16  the notion that the Part D was sent because there is a
17  preprinted section on a certification of service, and buried
18  in there it says that Part D was filed, but where is it?
19  We've raised this issue three separate times.  The
20  Government's had every opportunity to pull out of their file
21  a copy of that notice, and we've yet to see it.
22      The other thing which raises concern in my mind is we
23  haven't seen the -- Google communicated by E-mail to the IRS
24  stating what their policy was with respect to service on an
25  account holder of the summons.  We don't know what they said
```

in that E-mail, but my guess is that Google was looking for the Government's acquiescence in doing that.  The Government waits --

   THE COURT:  Well, that's a guess, right?

   MR. OSTRANDER:  That's a guess.  I don't know.  But the fact is that it was sent by registered mail.

   THE COURT:  I mean, it would be a different situation if Google said unless we -- you know, we won't -- we don't enforce our policy unless you tell us, which would seem unlikely and didn't happen.

   MR. OSTRANDER:  I don't know what they said, but that's why we need the discovery, to find out what's going on in the Government's head.

   THE COURT:  Well, but Pacific Fishery says you don't get discovery about possible past sins that are moot.

   MR. OSTRANDER:  It's not a moot sin.

   THE COURT:  But my -- okay.

   MR. OSTRANDER:  I don't think you can --

   THE COURT:  Isn't this a tempest in a teapot?  You said she's saying mootness to this.  You can bring up with respect to the new summons if you think it's still relevant somehow.

   MR. OSTRANDER:  The Government is attempting to cleanse their bad conduct out of --

   THE COURT:  Oh God, I mean, this is so -- you

1 know, it's so extreme.  Bad conduct, some -- some -- you
2 have no real basis for that to --
3          MR. OSTRANDER:  Why has the Government waited 35
4 days to give Google the okay?
5          THE COURT:  Why does it take GSA a year to fix
6 something in a federal building?
7          MR. OSTRANDER:  Why doesn't --
8          THE COURT:  Why do most things take much too long?
9 Why do we all have to wait in line?  Why --
10         MR. OSTRANDER:  It's a -- well --
11         THE COURT:  I mean, is that -- because, you know,
12 I -- there's got to be something more than it takes a while
13 for the Government to do something.
14         MR. OSTRANDER:  I just don't think --
15         THE COURT:  Otherwise there'd be bad faith all the
16 time, wouldn't there?
17         MR. OSTRANDER:  You just can't take your -- you
18 can't rob the money from the bank that collected --
19         THE COURT:  But nobody -- but they didn't get any
20 money out of this.  I mean, nothing happened in response to
21 this.
22         MR. OSTRANDER:  But when have --
23         THE COURT:  That's what mootness is about.  But,
24 anyway, do you have anything further?
25         MS. MATCHISON:  No, your Honor, not unless you

1 have any questions.
2     THE COURT: So but what you're saying -- come back
3 to what you suggest --
4     MS. MATCHISON: Yes.
5     THE COURT: -- is the right way to dispose of this
6 now, the new summons --
7     MS. MATCHISON: That you grant the United States'
8 second motion to dismiss but with leave to amend so
9 Petitioners can amend their petition to quash to include the
10 new reissued summons.
11     THE COURT: And I suppose then they argue there's
12 something wrong with the newly issued summons because of the
13 old one and we're back --
14     MS. MATCHISON: I assume that's what Petitioner's
15 counsel would tell us.
16     MR. OSTRANDER: Likely.
17     THE COURT: Right. All right. Well, that's what
18 I'm inclined to do. All right. Thank you.
19     MR. OSTRANDER: Thank you.
20     MS. MATCHISON: Thank you, your Honor.
21     (Proceedings adjourned at 9:41 a.m.)

1  CERTIFICATE OF TRANSCRIBER

2

3      I certify that the foregoing is a true and correct
4  transcript, to the best of my ability, of the above pages of
5  the official electronic sound recording provided to me by
6  the U.S. District Court, Northern District of California, of
7  the proceedings taken on the date and time previously stated
8  in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.



14
15
16      Echo Reporting, Inc., Transcriber
17          Wednesday, March 23, 2016
18
19
20
21
22
23
24
25