UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXCREST LIMITED,<br><br>            Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>            Respondent. | Case No.15-mc-80270-JST<br><br>**ORDER GRANTING PETITIONER MAXCREST LIMITED'S MOTION FOR STAY PENDING APPEAL**<br><br>Re: ECF No. 52 |

Before the Court is Petitioner Maxcrest Limited's Motion for Stay Pending Appeal. ECF No. 52. For the reasons set forth below, the Court grants the motion.

I.      **BACKGROUND**

This case began with the Russian Federation making an "exchange of information request" to the United States regarding the tax liabilities of NefteGasIndustriya-Invest ("NGI"), specifically for information regarding Platten Overseas Ltd. ("Platten"). ECF No. 33 ¶ 11. The Russian Federation's request was made pursuant to Article 25 of the Convention Between the United States of America and the Russian Federation for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital ("the Convention").

Pursuant to the Russian Federation's request, the IRS issued two third-party summonses directed to Google Inc. ("Google") regarding the email account information of Platten Overseas ("Platten"). Platten dissolved, but prior to its dissolution Maxcrest Limited ("Maxcrest") held all of Platten's voting shares. Id. ¶ 10. Maxcrest asserts it is the successor in interest to Platten's interests and sought to quash both summonses. ECF No. 1; ECF No. 33.

The IRS withdrew the first summons after Maxcrest filed a petition requesting that this Court quash the first summons due to procedural violations. ECF No. 22. On the basis of its first

Petition to Quash, Maxcrest then sought discovery to pursue its claim that the Government acted in bad faith in issuing the first summons. ECF No. 23. The Government moved to dismiss Maxcrest's petition to quash the first summons, arguing that the Petition had become moot since the first summons was withdrawn. ECF No. 22. Subsequently, the United States served a second, substantially similar summons on Google and served notice on Maxcrest, thereby cleansing the second summons of the procedural defects alleged against the first summons by Maxcrest in its initial Petition to Quash. ECF No. 32; ECF No. 33, ¶ 34.

Magistrate Judge Laporte issued a Report & Recommendation ("R&R") in which she recommended granting the Government's motion to dismiss Maxcrest's petition with leave to amend to challenge the second summons. ECF No. 29. The parties subsequently agreed that Maxcrest could file an amended petition to quash the second summons. ECF No. 32. Maxcrest filed an amended petition, ECF No. 33, and the Government moved to dismiss the amended petition, ECF No. 43.

In its last order, this Court granted the Government's Motion to Dismiss the Amended Petition on two grounds. ECF No. 50. First, the United States met its burden of showing that the elements of the Powell test were satisfied in relation to the second summons. Id. at 10. Second, Maxcrest had not plausibly shown an abuse of process or lack of good faith on the part of the IRS in issuing the second summons. Id. Consequently, the Court dismissed the amended petition and granted the IRS the authority to enforce the second summons.

Maxcrest has since appealed the order granting the United States' motion to dismiss the amended petition, and it now seeks a stay of that order pending appeal to the Ninth Circuit.

## II.   LEGAL STANDARD

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433–34

(2009) (internal alterations, citations, and quotations omitted).

To decide whether a stay pending appeal is warranted, district courts consider four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties to the proceeding; and (4) the public interest implicated by the grant or denial of the stay. Id. at 434; see also Leiva–Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

The Court finds that Maxcrest has made a sufficient showing that its appeal raises a legal question of first impression—namely, whether a taxpayer may rely on allegations of bad faith related to an earlier withdrawn summons to establish that the IRS acted in bad faith with respect to a second, reissued summons. This factor therefore weighs in favor of granting the stay.

A party seeking to prevent the enforcement of an IRS summons bears a heavy burden. Crystal v. United States, 172 F.3d 1141, 1144 (9th Cir. 1999). "The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." RNR Enterprises, Inc. v. S.E.C., 122 F.3d 93, 96 (2d Cir. 1997). And the Ninth Circuit will only reverse this Court's decision to enforce the IRS summons if it was clearly erroneous. See U.S. v. Kersting, 891 F.2d 1407, 1410 (1989) (citing Ponsford v. United States, 771 F.2d 1305, 1307 (9th Cir.1985)), rev'd on other grounds, U.S. v. Carter, 117 F.3d 396 (9th Cir. 1994).

Despite its heavy burden and this deferential standard of appellate review, Maxcrest argues that it is likely to succeed on the merits of its claim because the following allegations lead to a plausible inference of bad faith by the government: (1) When giving Platten notice of the first summons, the IRS did not include the statutorily required form notifying Platten of its right to challenge the summons; (2) the IRS took thirty-five days to respond to Google's request to send a copy of the first summons to Maxcrest, during which time the twenty-day period to challenge the summons had expired; and (3) the IRS used U.S. Mail service to send notice to Platten in the British Virgin Islands. ECF No. 52 at 4-5; ECF No, 61 at 5. Although all of these alleged deficiencies relate to the *first* summons that the IRS has since withdrawn, and not the second

summons at issue in this amended petition, Maxcrest argues that the IRS should not be able to "simply reissue an identical summons once litigation has begun and wash away all negative inferences that can be drawn from its prior deficient notice." ECF No. 52 at 7. At the very least, Maxcrest argues, its appeal presents a serious legal question of first impression that warrants granting a stay. Id. at 6-7. The Court agrees as to this last point.

As noted in the Court's order granting the motion to dismiss, neither party has cited, and the Court has been unable to locate, any case addressing whether a reissued summons is unenforceable based on allegations of bad faith that relate only to an earlier withdrawn summons. See ECF No. 50 at 9; ECF No. 60 at 6. Although this Court found Maxcrest's fruit-of-the-poisonous-tree argument "unpersuasive" in its order dismissing the petition, it acknowledges that Maxcrest's appeal raises a novel legal issue of first impression in the Ninth Circuit.[1] ECF No. 50 at 9. And "unsettled questions of law present serious legal questions so as to demonstrate sufficient likelihood of success on a motion to stay." Gray v. Golden Gate Nat. Recreational Area, No. C 08-00722 EDL, 2011 WL 6934433, at *1–2 (N.D. Cal. Dec. 29, 2011) (internal citations omitted).

Although it is unclear whether the Ninth Circuit will ultimately agree with Maxcrest,[2] the

---

[1] Two district courts in Michigan suggest that "the fruit of the poisonous tree" doctrine does not apply in the context of IRS summonses. See Charles v. United States, No. 13-50937, 2014 WL 1464459, at *7 (E.D. Mich. Apr. 15, 2014) (finding that the "fruit of the poisonous tree" doctrine does not apply where the IRS "utilized a 'no notice' summons in April 2013 to obtain information the IRS referenced in the June Summons" and petitioner argued a lack of good faith in issuing the June Summons); Charles v. United States, No. 1:13-MC-46, 2013 WL 6404632, at *4 (W.D. Mich. Aug. 22, 2013) (same). The District of Idaho similarly refused to consider "whether to suppress [a second] summons under the . . . 'fruit of the poisonous tree'" doctrine because "nothing in Petitioners' arguments related to the [first summonses] indicate[d] that the IRS had a hidden, irrelevant, or bad-faith purpose that can be attributed to the [second summons]." Marcon Inc. v. United States, No. MC 08-6562-S-EJL-REB, 2009 WL 5557512, at *4 (D. Idaho Nov. 19, 2009). However, because these district court opinions do not have binding precedential value, they do not refute Maxcrest's claim that there is a serious legal question for the Ninth Circuit on appeal.

[2] The Ninth Circuit has suggested that courts should excuse procedural errors related to notice where they are "clearly harmless." See United States v. Richey, 632 F.3d 559, 564–65 (9th Cir. 2011) (holding that, although "[t]he administrative process was not completely followed because [the petitioner] was served by certified mail rather than by personal service," the district court erred by quashing the summons because "[the petitioner] had actual notice of the summons, there was no prejudice to the Taxpayers who timely intervened, and the Government acted in good faith when it tried to effect service by certified mail."). However, Richey is arguably distinguishable from this case for two reasons. First, Maxcrest does not just allege bad faith stemming from

Court finds that Maxcrest has met its burden by showing that its appeal raises a serious legal question warranting a stay. See Leiva-Perez v. Holder, 640 F.3d 962, 967–68 (9th Cir. 2011).

### B. Irreparable Injury to the Party Requesting Stay

The irreparable injury prong of the test "requir[es] the applicant to show . . . that there is a *probability* of irreparable injury if the stay is not granted." Lair, 697 F.3d at 1214 (emphasis in original). "In other words, [a petitioner's] burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome." Leiva-Perez, 640 F.3d at 968. The threshold for the second factor is higher than that of the first factor because, while "a court often cannot reasonably determine whether the petitioner is more likely than not to win on the merits, [] typically it is easier to anticipate what would happen as a practical matter following the denial of a stay." Leiva-Perez, 640 F.3d at 968.

Maxcrest argues that it will suffer two kinds of irreparable harm if it is required to produce the requested information pending appeal. First, Maxcrest argues that turning over this information now would moot its appellate rights because the Russian Federation is unlikely to comply with a court order to return the summoned information should the Ninth Circuit rule in Maxcrest's favor and quash the summons at issue. See ECF No. 52 at 7-8; ECF No. 61 at 7-9. Second, Maxcrest argues that its privacy interests will be violated if the IRS obtains its Google account user information through an unenforceable summons and subsequently passes that information on to the Russian Federation. Id.

As a legal matter, Maxcrest's appeal will not be rendered moot if this Court denies the motion to stay. "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed" as moot. Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)

---

procedural defects; it also alleges that the IRS engaged in other conduct, such as waiting thirty-five days to respond to Google's request to notify Maxcrest of the summons. Second, Richey did not involve the reissuance of a summons after a motion to quash had already been filed and allegations of bad faith had already been pleaded.

(quoting Mills v. Green, 159 U.S. 651, 653 (1895)).  If, on the other hand, "the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks and citations omitted).

The Supreme Court has held that a party who turns over requested information pursuant to an IRS summons enforcement order retains a concrete interest sufficient to avoid mootness on appeal.  See Church of Scientology, 506 U.S. at 11-13.  In Church of Scientology, the Court explained that, although it would be "too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information," the appellate court could still "effectuate a partial remedy" by ordering the IRS to destroy or return the records that were still in its possession.  Id.  Such a remedy would provide "*some* form of meaningful relief" by addressing the taxpayer's ongoing possessory interest in their records and, as a result, the appeal was not moot.  Id. (emphasis in original).  At least one district court has held that this partial remedy is equally available where the court could order the IRS to request that a foreign sovereign return the produced information.  See Villarreal v. United States, No. 2:11-CV-1594 JCM GWF, 2013 WL 3200084, at *5 (D. Nev. June 21, 2013) (noting that, although the district court and the appellate court "could not require a foreign country's government to destroy or return the summoned materials," "the court's order mandating that the IRS return or destroy the summoned materials would satisfy the partial remedy guaranteed by *Church of Scientology*.").

As in Church of Scientology, Maxcrest will retain a possessory interest in its records sufficient to avoid mootness on appeal even if this Court does not stay its Order.  Although it is uncertain whether the Russian Federation would actually comply with a request to return or destroy the records as a practical matter,[3] "such uncertainty does not typically render cases moot"

---

[3] Maxcrest has pointed to evidence that the Russian Federation's compliance with its treaty obligations is "not consistent or guaranteed."  ECF No. 61 at 8; see also ECF No. 62, Ex. B (U.S. Department of State Report expressing concerns about Russia's failure to comply with international arms control, nonproliferation, and disarmament agreements); ECF No. 62, Ex. C at 65 (Congressional testimony from the Deputy Assistant Secretary of Defense in which he explains that Russia "has demonstrated a blatant disregard for its international obligations and commitments, both to other countries and to its own citizens").  And, although the United States suggests that Russia would comply with such a request based on "general principles of international comity," it concedes that "it is not completely certain that the United States could effect the return or destruction of the summoned material" from the Russian Federation.  ECF No.

from a legal perspective. Chafin, 133 S. Ct. at 1025 (holding that uncertainty regarding whether Scotland would actually comply with a court order pursuant to an international treaty did not render the case moot because the parties still had a concrete interest, no matter how small, in securing the order, despite the "potential difficulties in enforcement"). After all, "[c]ourts often adjudicate disputes where the practical impact of any decision is not assured," and this is particularly true with respect to cases involving foreign nations because "[their] choices to respect final rulings are not guaranteed." Id.

In sum, the central question regarding mootness is whether Maxcrest would continue to have a concrete interest in the outcome of this litigation such that a partial remedy would be *available* to either this Court or the Ninth Circuit, not whether such a remedy would be guaranteed as effective. See Church of Scientology, 506 U.S. at 13 ("[A] court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot."). The Supreme Court's decision in Church of Scientology makes clear that Maxcrest does have such an interest in these circumstances and, as a result, Maxcrest's appeal would not be mooted if this Court refuses to stay its Order pending appeal.

The Court agrees with Maxcrest, however, that it would likely suffer irreparable harm to its privacy interests absent a stay. Unlike Maxcrest's possessory interest, which could potentially be redressed if the Ninth Circuit rules in Maxcrest's favor, any harm to Maxcrest's privacy interests would be irreparable because "there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the [the requested information]" once that information has already been divulged. See id. at 12 (noting that "it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred").

Maxcrest has shown that, absent a stay of the Court's order, it will likely suffer irreparable injury to its privacy interests. The "irreparable harm" factor thus weighs in favor of a stay.

---

60 at 8.

### C. Substantial Injury to Other Parties Interested in the Proceeding and Public Interest

The third and fourth factors for granting a stay merge when the government is the opposing party, as is the case here. Leiva-Perez, 640 F.3d at 970.

The government's arguments with respect to this factor focus exclusively on the fact that a stay will further delay these proceedings. ECF No. 60 at 10-11. Specifically, the government argues that "further delay here will prejudice the Russian Federation's ability to determine the income tax liabilities of NefteGasIndustriya-Invest under Russian law." Id. The IRS' delay of almost a year before acting on the information exchange request deprives this argument of its persuasive force. ECF No. 50 at 1-2. Any hardships that the Russian Federation will face as a result of delay are at least as attributable to the IRS' delay in processing the Russian Federation's request for information as they would be to a stay of this Court's order pending appeal.

In addition, although summons enforcement proceedings are meant to be summary in nature, this expediency interest must be "balance[d]" against a noticee's right to contest enforcement in federal court under 26 U.S.C. § 7609. See Clarke, 134 S. Ct. at 2367 (noting that prior cases have struck a balance between these two interests). Thus, while the IRS' ability to issue and enforce summonses is broad, it is not without limit. Additionally, the IRS' ability to issue summonses is predicated on the assumption that summonses assist the IRS in its investigative responsibilities; here, the IRS is not conducting an investigation of Maxcrest, Platten, or any other related party. To the extent that the IRS is claiming hardship based on the Russian Federation's inability to assess Platten's tax liability, its claim of hardship is attenuated.

In sum, Maxcrest has the better argument regarding the balance of hardships and the public interest, and therefore both of these factors also counsel in favor of granting a stay.

/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

Because Maxcrest has shown that all four factors weigh in favor of granting a stay, the Court grants Maxcrest's motion to stay this Court's order pending appeal to the Ninth Circuit.

IT IS SO ORDERED.

Dated: November 7, 2016

_____
JON S. TIGAR
United States District Judge